IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| Timothy Bork,<br><br>    Petitioner,<br><br>vs.<br><br>Ely Infante, *Commander, United States Navy Commandant, Naval Consolidated Brig Charleston*,<br><br>    Respondent. | C/A No. 9:23-CV-01073-JFA<br><br><br><br>**ORDER** |

I.   **INTRODUCTION**

Petitioner Timothy Bork ("Petitioner"), an inmate at the Naval Brig in Charleston, South Carolina, brings this petition for writ of habeas corpus ("Petition") pursuant to 28 U.S.C. § 2241. (ECF No. 1). In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2)(c) (D.S.C.), the case was referred to the Magistrate Judge for initial review.

Respondent Commander Ely Infante ("Respondent") filed a Motion to Dismiss or, in the alternative, for Summary Judgment. (ECF No. 12). Once fully briefed, the Magistrate Judge assigned to this action[1] reviewed the Petition along with the parties' briefs on the instant Motion and prepared a thorough Report and Recommendation ("Report"). The Magistrate Judge opines that Respondent's Motion should be granted and the Petition

---

[1] The Magistrate Judge's review is made in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(d) (D.S.C.). The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976).

should be dismissed. (ECF No. 15). The Report sets forth, in detail, the relevant facts and standards of law on this matter, and this Court incorporates those facts and standards without a recitation.

Petitioner was advised of his right to object to the Report which was entered on the docket on October 25, 2023. *Id.* Petitioner timely filed his objections to the Report on November 8, 2023. (ECF No. 18). Thus, this matter is ripe for review.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Although this Court incorporates the factual background discussed in the Report, a brief recitation of the relevant facts is necessary to properly address Petitioner's objections. Petitioner was a retired U.S. Navy Hospital Corpsman First Class who transferred to the Navy Fleet Reserve in 2013. Importantly, as a member of the Navy Fleet Reserve, Petitioner remained on retainer pay with the Navy and was expected to maintain readiness for active duty, comply with certain travel and reporting requirements, and participate in training (if and as required).

In May of 2020, a general court-martial convened at Naval Base San Diego, California, and sentenced Petitioner to six years' confinement and dishonorable discharge after he pleaded guilty to one specification of sexually assaulting a child and four specifications of sexually abusing a child. *United States v. Bork*, No. 202000191, 2022 WL 175246, at *1 (N-M. Ct. Crim. App. Jan. 20, 2022), review denied, 82 M.J. 370 (C.A.A.F. 2022). Specifically, Petitioner was found to have violated Article 120B of the Uniform Code of Military Justice, codified at 10 U.S.C. § 920b, for discussing, viewing, and

engaging in various sexual activities with a fifteen-year-old child while in Japan. *See id.* Though Petitioner appealed, Petitioner's conviction was affirmed, and the U.S. Court of Appeals for the Armed Forces ("CAAF") denied Petitioner's petition for review. United States v. Bork, 82 M.J. 370 (C.A.A.F. 2022). Petitioner is currently confined at the Naval Consolidated Brig in Charleston, South Carolina for sexual offenses against a child.

On March 16, 2023, Petitioner submitted the instant Petition to this Court. (ECF No. 1). Petitioner asks this Court to "grant his application for a writ of habeas corpus, dismiss the findings of the court-martial for jurisdictional error, and order his immediate release." (ECF No. 1-1, p. 7).

### III.   STANDARD OF REVIEW

A district court is only required to conduct a *de novo* review of the specific portions of the Magistrate Judge's Report to which an objection is made. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); *Carniewski v. W. Virginia Bd. of Prob. & Parole*, 974 F.2d 1330 (4th Cir. 1992). In the absence of specific objections to portions of the Magistrate's Report, this Court is not required to give an explanation for adopting the recommendation. *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983). Thus, the Court must only review those portions of the Report to which Petitioner has made a specific written objection. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 316 (4th Cir. 2005).

"An objection is specific if it 'enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute.'" *Dunlap v. TM Trucking of the Carolinas, LLC*, No. 0:15-cv-04009-JMC, 2017 WL 6345402, at *5 n.6

(D.S.C. Dec. 12, 2017) (citing *One Parcel of Real Prop. Known as 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996)). A specific objection to the Magistrate's Report thus requires more than a reassertion of arguments from the complaint or a mere citation to legal authorities. *See Workman v. Perry*, No. 6:17-cv-00765-RBH, 2017 WL 4791150, at *1 (D.S.C. Oct. 23, 2017). A specific objection must "direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

"Generally stated, nonspecific objections have the same effect as would a failure to object." *Staley v. Norton*, No. 9:07-0288-PMD, 2007 WL 821181, at *1 (D.S.C. Mar. 2, 2007) (citing *Howard v. Secretary of Health and Human Services*, 932 F.2d 505, 509 (6th Cir. 1991)). The Court reviews portions "not objected to—including those portions to which only 'general and conclusory' objections have been made—for *clear error*." *Id.* (citing *Diamond*, 416 F.3d at 315; *Camby*, 718 F.2d at 200; *Orpiano*, 687 F.2d at 47) (emphasis added).

The standards for a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and/or a motion summary judgment are well known and stated within the Report which incorporated herein.

## IV.    DISCUSSION

In the instant petition, Petitioner presents two grounds for relief:

> GROUND ONE: The court-martial was barred from exercising subject matter jurisdiction as to Charge I, Specifications 2 and 3 because of the U.S. Japan Status Forces Agreement ("SOFA") assigns those offenses to a Japanese court, which Japan did not waive.
>
> GROUND TWO: Exercise of court-martial jurisdiction over a retiree is unconstitutional.

(ECF No. 1-1, p. 6).

The Report finds that both of Petitioner's grounds for relief fail, and as such, the Report recommends granting Respondent's Motion and dismissing the Petition with prejudice. (ECF No. 25). As to the first ground for relief, the Report finds that Petitioner lacks standing to bring forth a claim alleging a violation of an international agreement like the Japan SOFA. Alternatively, regardless of the standing issue, the Report finds that Petitioner failed to show that the court-martial lacked subject matter jurisdiction over him for the purposes of his prosecution. Further, as to the second ground for relief, the Report finds Petitioner's status as a retiree did not exempt him from being considered part of the "land and naval forces" such that the court-martial did have proper personal jurisdiction over him and his crimes. *See* (ECF No. 1, p. 9).

After reviewing the parties' briefs, the Report, and the applicable law on the issues presented in the Petition, this Court agrees with the Report and accepts the Magistrate Judge's recommendation to dismiss the instant Petition. (ECF No. 1).  However, because the Petitioner has filed objections to the Report, this Court will address Petitioner's specific

5

objections in turn. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); *Carniewski v. W. Virginia Bd. of Prob. & Parole*, 974 F.2d 1330 (4th Cir. 1992).

### A. The Magistrate Judge Improperly Found that Petitioner Lacked Standing to Raise the Jurisdictional Defect Presented in this Case

The Report concludes and this Court agrees that Petitioner lacks standing to allege a violation of an international treaty such as the SOFA which is applicable in this case.

In his first ground for relief, Petitioner attempted to argue that Japan had the primary right to exercise jurisdiction over his offenses, and the SOFA provides that Japan must waive this right. Because Japan did not waive its right to primary jurisdiction over his offenses, the court-marital lacked subject matter jurisdiction over him, and his criminal proceedings are a nullity.

The Report found and this Court agrees that Petitioner is essentially asserting a violation of the treaty between the United States and Japan, and Petitioner lacks standing to raise an alleged breach of a treaty between two nations. Further, regardless of the standing issue, the Report found Petitioner still failed to demonstrate that subject matter jurisdiction was lacking. The Report explained that the SOFA provides the nations with concurrent jurisdiction which means that both Japan and the United States have subject matter jurisdiction over the offenses simultaneously. After analyzing the SOFA as well as the interpretation of this provision in the SOFA by other courts, the Report found there was nothing in the SOFA to suggest that only one country could have subject matter jurisdiction at a time. Finally, even assuming that the United States did violate the SOFA by exercising jurisdiction over Petitioner's offenses, the language of the SOFA does not suggest that a

6

nation's failure to follow the waiver provision results in a nullity of one nation's prosecution of an offense. See (ECF No. 15, p. 13) citing *Brazell v. Uddenberg*, No. 22-55954, 2023 WL 5665772, at *2 (9th Cir. Sept. 1, 2023).

Now, in his objections, Petitioner asserts that he is not required to show standing to assert that his court-martial was without subject-matter jurisdiction. Petitioner argues there is no separate standing requirement for a party to a judicial proceeding to contest the subject matter jurisdiction of the federal courts because a proceeding lacking subject matter jurisdiction is a nullity.

Petitioner's objection fails for two reasons. First, Petitioner frames his argument as raising a jurisdictional issue, however, Petitioner's argument would require this Court to find the United States violated the Japan SOFA. Stated another way, if this Court were to agree with Petitioner's argument that he could assert a jurisdictional defect in his proceedings, this Court would also be finding that the United States violated its agreement with Japan. Nonetheless, standing aside, Petitioner's argument still fails because it does not address the Report's finding that the nations had concurrent jurisdiction over his offenses. As the Report points out, concurrent jurisdiction does not mean exclusive jurisdiction. Further, Petitioner does not address the Report's other sustaining ground that the SOFA does not state that one nation's violation of the jurisdictional waiver provision in the SOFA results in the nullity of the other nation's criminal proceedings. Thus, Petitioner's objection on this basis is overruled.

Petitioner further objects that the Magistrate Judge inappropriately relies on a supposed "diplomatic" remedy for the SOFA-based jurisdictional defect. Petitioner's

7

objection refers to the Report's finding that "federal courts have alleged violations of other SOFA treaties should be addressed diplomatically between two nations." (ECF No. 15, p. 11). The Report cites to *Patterson v. Wagner* for support as it insinuates that Patterson stands for the proposition that a SOFA between nations establish a diplomatic conflict resolution scheme with no role for the judiciary. 785 F.3d 1277, 1285 (9th Cir. 2015) ("The [U.S.—South Korea] SOFA's provisions thus establish a diplomatic conflict resolution scheme with no role for the judiciary."). Thus, any violation by the United States of the Japan SOFA cannot be resolved in this Court or by Petitioner raising the violation as an issue.

Petitioner argues *Patterson* does not stand for this proposition. Petitioner argues *Patterson* merely prevents a court in the United States from creating a judicial remedy *against* a foreign sovereign to enforce a SOFA's provisions. However, Petitioner asserts that the SOFA created personal rights for those covered by its protections. Specifically, Petitioner asserts Patterson allows an American citizen who seeks to enforce a SOFA double jeopardy provision against a foreign power to do so "in the courts of [that] country." *Id.* Because Petitioner is seeking to raise issues concerning his individual rights such as the jurisdictional defect involved in his proceedings and the failure of his double jeopardy protection to attach, Petitioner contends his remedy is judicial not diplomatic.

Admittedly, Petitioner's argument is somewhat confusing as to what he is attempting to use Patterson for. However, assuming he is attempting to use it as a vehicle for his instant claims, Petitioner's argument fails. A close reading of Patterson reveals that the court's ultimate holding was that "[t]hough the SOFA appears to create individual

8

rights, [the court] concludes that they are not judicially enforceable." *Id.* at 1284. Petitioner seems to overlook this portion of the court in Patterson's opinion. Thus, Petitioner's objection is overruled on this basis.

### B. The Magistrate Judge Disregarded the Law of this Circuit

Petitioner objects that the Magistrate Judge disregarded the law of this circuit in its Report when reaching its conclusion to dismiss Petitioner's claims. Specifically, Petitioner refers to a Fourth Circuit Court of Appeals opinion wherein the court held that the provisions of the SOFA, including its jurisdictional provisions, are binding on this court. *See Bell v. Clark*, 437 F.2d 200, 203 (4th Cir. 1971). Instead, Petitioner alleges the Magistrate Judge ignored the SOFA and relied on out of circuit authority to reach its conclusions.

This Court finds the Magistrate Judge did the exact opposite. The Magistrate Judge conducted a close reading of the SOFA to conclude that it provided concurrent jurisdiction to the United States and Japan over Petitioner's offenses, and further, the alleged failure of the United States to follow the procedure outlined in the SOFA for exercising primary jurisdiction over Petitioner's claims, does not deprive the court-martial of jurisdiction or nullify Petitioner's criminal proceedings. Though Petitioner states the Magistrate Judge disregarded the law of this circuit when reaching this conclusion, the Petitioner fails to provide any case law from the Fourth Circuit to undermine the Report's conclusion. This Court finds that the Report has not disregarded the terms of the SOFA, or the weight of its authority, but rather, the Report simply finds that the SOFA does not support Petitioner's position.

9

Thus, this Court overrules Petitioner's objection on this basis.

### C. The Magistrate Judge Incorrectly Views the Court-Martial as Automatically having the Ability to Exercise Jurisdiction over Offenses Committed in Japan

Petitioner objects that the Magistrate Judge incorrectly views the court-martial as inherently possessing the ability to exercise jurisdiction in a friendly foreign country. Petitioner's argument boils down to the following: "Japan did not consent to the exercise of jurisdiction contrary to the rules contained in Article XVII of the US-Japan Sofa." (ECF No. 18, p. 6).

Petitioner's argument is a rehashing of his previous arguments. He is not asserting a new error in the Report or a new reason why the Report's conclusion regarding the court martial's jurisdiction over his offenses was in error. The Report explained, and this Court has reiterated, the SOFA provided the United States and Japan with concurrent jurisdiction over sexual offenses against children. Because concurrent jurisdiction applies, Petitioner is correct that Japan retains the "primary right to exercise jurisdiction" under Article XVII(3)(b) and further, that Japan never waived this right. However, as the Magistrate Judge aptly points out, "there is nothing in the Japan SOFA's Article XVII concurrent jurisdiction scheme that strips the court-martial of subject-matter jurisdiction over Petitioner's offenses in the event Japan or the United States runs afoul" of the SOFA's jurisdictional waiver procedure. The Magistrate Judge is correct, and other courts have found the same. *See Brazell v. Uddenberg*, No. 22-55954, 2023 WL 5665772, at *2 (9th Cir. Sept. 1, 2023).

Thus, Japan's failure to waive its right to exercise jurisdiction over Petitioner's offenses does not negate the court-martial's jurisdiction nor does it nullify Petitioner's conviction. Petitioner's objection on this basis is overruled.

### D. The Magistrate Judge Failed to Consider Petitioner's Right to Double Jeopardy Protection

Petitioner objects that the Magistrate Judge failed to consider his right to double jeopardy protection under the SOFA. Petitioner argues he has standing to challenge the court-martial's exercise of jurisdiction over his offenses because the SOFA grants him a personal enforceable right to double jeopardy protection. Petitioner argues this right did not attach because the United States did not obtain a waiver of Japan's primary jurisdiction. As such, Petitioner is still at risk of being prosecuted in Japan.

Once again, Petitioner's arguments are a rehashing of those presented in his Response in Opposition to Respondent's Motion for Summary Judgment. The Report found, and this Court agrees, the SOFA's double jeopardy prohibition does provide a personally enforceable right. However, Petitioner is not asserting his right against double jeopardy was violated. Petitioner's argument is an unsuccessful attempt at using his personal right of double jeopardy protection to challenge the court-martial's jurisdiction over his offenses. The Report found Petitioner could not use this right in this way, and the Report was correct. Petitioner's objections to the Report's finding on this basis are simply repetitive of the same arguments the Report already rightfully denied.

Thus, Petitioner's objections on this basis are overruled.

### E. The Magistrate Judge Failed to Consider the Views of a Foreign Court

Petitioner objects that the Magistrate Judge failed to consider decisions of foreign courts which found that a SOFA's jurisdictional rules were binding and enforceable. Petitioner points to the opinions of several foreign courts, including Japanese courts, as support for his argument.

Petitioner's argument and case law miss the mark. The Report nor this Court dispute that the SOFA is binding and enforceable. Further, this Court does not dispute that Japan had primary jurisdiction over Petitioner's offenses, and Japan did not waive its right to jurisdiction. This Court can even go a step further and find that the United States likely violated the SOFA by failing to provide Japan with an opportunity to waive its jurisdiction over Petitioner's offenses. However, none these concessions change the validity of Petitioner's conviction, nor do they address the Report's ultimate finding that Petitioner lacks standing to raise these issues. Petitioner seeks to use the United States' violation of the SOFA as a vehicle to challenge the court-martial's jurisdiction over his offenses. But one does not equal the other. As the Report explained, the United States' violation of the SOFA does not strip the court-martial of jurisdiction. And also, Petitioner lacks the standing to raise a violation by the United States of the SOFA against Japan as a means of challenging his conviction. While the decisions cited by Petitioner may be instructive, they are not persuasive because they fail to identify an error in the Report or a clear basis for this Court to reject the Magistrate Judge's recommendations.

Thus, Petitioner's objections are overruled on this basis.

### F. The Magistrate Judge Ignores the Improper Convening of the Court-Martial

Although framed a different way, Petitioner's objection is the same—Petitioner is still arguing that the court-martial lacked jurisdiction over his offenses because Japan did not waive its right to primary jurisdiction as required by the SOFA. Because Japan did not waive its right to primary jurisdiction, the court-martial was not properly convened and as such, Petitioner argues this Court should find that the judgment of the court-martial is void. For support, Petitioner points to the Manual for Courts-Martial which states:

> "Under international law, a friendly foreign nation has jurisdiction to punish offenses committed within its borders by members of a visiting force, unless it expressly or impliedly consents to relinquish its jurisdiction to the visiting sovereign. The procedures and standards for determining which nation will exercise jurisdiction are normally established by treaty…As a matter of policy, efforts should be made to maximize the exercise the court-martial jurisdiction over persons subject to the code to the extent possible under applicable agreements."

Manual for Courts Martial (2016 ed.) at II-10.

However, the Rules for Courts-Martial also states:

> "[w]here an act or omission is subject to trial by court-martial *and* by one or more civil tribunals, foreign, or domestic, the determination which nation, state, or agency will exercise jurisdiction is a matter for the nations, states, and agencies concerned, and **is not a right of the suspect or accused**."

R.C.M. 201(d)(3) (emphasis added).

The District Court for the Southern District of California cited to the above provision in the Rules for Courts-Martial in a case with similar arguments and parallel facts to the instant matter. This Court finds the district court's opinion in *Brazell* to be highly instructive. In *Brazell*, the court made two relevant findings: (1) the petitioner lacked

standing to challenge a violation of the SOFA and (2) even assuming the petitioner had standing to make such a challenge, the United States' violation of the SOFA did not deprive the court-martial of jurisdiction over Petitioner's offenses. In reaching its final conclusion, the district court stated that "[c]ircuit courts confronted with alleged violations of other SOFA agreements have held that such issues are not for the courts to decide but instead must be addressed diplomatically between two nations."

Thus, this Court finds the district court's opinion in *Brazell* forecloses Petitioner's argument that the court-martial was improperly convened and that his conviction is void as a result. Petitioner's objection is overruled on this basis.

### G. The Magistrate Judge Incorrectly Found that the Joint Committee Provides Petitioner with a Diplomatic Remedy

In the Report, the Magistrate Judge also cites to the Ninth Circuit's affirming opinion in *Brazell* which stated that the SOFA's jurisdiction allocating provisions are not judicially enforceable because the SOFA specifies a diplomatic mechanism for resolving disputes. *See Brazell II*, No. 19-CV-1084 JLS (MSB), 2022 WL 4088617, at *1 (S.D. Cal. Sept. 6, 2022), *aff'd*, No. 22-55954, 2023 WL 5665772 (9th Cir. Sept. 1, 2023). The Magistrate Judge cites to the SOFA which states "[a] Joint Committee shall be established as the means for consultation between the [United States and Japan] on all matters requiring mutual consultation regarding the implementation of this Agreement." Article XXV of the SOFA.

In his objection, Petitioner argues the joint committee was established to resolve "disputes" concerning which nation has primary jurisdiction. Because there is no dispute

14

that Japan had primary jurisdiction over Petitioner's offenses, the Magistrate Judge's conclusion that the issue of jurisdiction would be resolved by the joint committee is incorrect. But the Petitioner makes this assertion regarding the purpose of the joint committee without any citation to the SOFA or case law for support. To the contrary, the SOFA is inexplicably clear that a joint committee shall be established as the means for consultation between the United States and Japan "*on all matters* requiring mutual consultation regarding the implementation of this Agreement." Art. XVII of the SOFA (emphasis added). If a provision in the SOFA exists that suggests the joint committee is only convened to resolve disputes regarding which nation shall exercise primary jurisdiction as Petitioner suggests, Petitioner has not cited to the provision and this Court is unaware of it. Based on the above provision, this Court finds that the SOFA is devoid of any language supporting Petitioner's proposition for the establishment and purpose of the joint committee. Further, Petitioner's objection on this basis does not move the needle on this Court finding his criminal proceedings before the court-martial are void or that the Report has erred in any of its conclusions regarding the same.

Thus, Petitioner's objection is overruled on this basis.

### H. The Magistrate Judge Failed to Consider that a Member of the Naval Fleet Reserve is Not a Member of the Armed Forces While in Japan

Petitioner argues he is not subject to court-martial jurisdiction because he was not a "member of the United States Forces" at the time of the alleged offense. The Magistrate Judge considered this argument and denied it. In the Report, the Magistrate Judge explained that Congress created multiple categories for naval personnel to fall into and one of them

15

is the Fleet Reserve. 10 U.S.C. § 8330(a). The Fleet Reserve is composed of "enlisted member[s] of the Regular Navy…who ha[ve] completed 20 or more years of active service in the armed forces." 10 U.S.C. § 8330(b). "Transfer to the Fleet Reserve is optional, and members of the Fleet Reserve are entitled to retainer pay, remain subject to recall at any time, and are subject to the UCMJ." *United Stats v. Begani*, 2021 WL 2639319, at *277 (C.A.A.F. June 24, 2021). Accordingly, the Report states "for 'over a hundred years, Congress, the military, and the Supreme Court have all understood that retired members of all branches of service of the armed forces who continue to receive pay are part of 'of the land and naval forces' and subject to the UCMJ or its predecessors.' " (ECF No. 15, pp. 16-17) citing *Id.*

Thus, Petitioner's objection on this basis is overruled.

### I. The Magistrate Judge Ignores the Lack of Real Military Function for Members of the Fleet Reserve

Relatedly, Petitioner argues the Magistrate Judge incorrectly found that Petitioner was amenable to court-martial jurisdiction. Petitioner objects to this conclusion because he argues his duty as a Fleet Reservist was limited to obeying an order recalling him to active duty, not to discipline and control over his everyday life. In essence, Petitioner is arguing that as a member of the Fleet Reserve he was the equivalent of a citizen, and not a member of the military. Accordingly, the court-martial should not have jurisdiction over him.

Despite being a member of the Fleet Reserve, the Magistrate Judge found that Petitioner was still subject to the jurisdiction of the court martial because he could still be considered a member of the military. To reach this conclusion, the Magistrate Judge

16

considered that Petitioner was still being paid, subject to recall, and required to maintain miliary readiness and obey orders.

In his objection, Petitioner criticizes the Report's reliance on *Larrabee v. Toro* which is a case directly on point that conducted a thorough and instructive analysis on whether members of the Fleet Marine Reserve were part of the "land and naval forces" and subject to court-martial jurisdiction. *Larrabee v. Toro*, 45 F.4th 81, 102 (D.C. Cir. 20222) Because the court in *Larrabee* ultimately held that a member of the Fleet Marine Reserve could still be considered a part of the "land and naval forces," Petitioner urges this Court to decline to follow this case. Instead, Petitioner argues this Court should rely on *Larrabee v. Braithwaite*, 502 F.Supp. 3d 322, 329 (D.D.C. 2020) which found the opposite. Petitioner made the same argument in his Response in Opposition and the Report explained in declined to rely on *Braithwaite* for the following three reasons: (1) it was reversed on appeal by the D.C. Circuit Court of Appeals which Petitioner fails to mention; (2) the D.C. Circuit's reasoning is consistent with the settled position of the CAAF which recognizes that military retirees are amenable to court-martial; and (3) the "only Article III court of appeals to have considered whether military retirees may be court-martialed reached the same result." *See Del Toro*, 45 F.4th at 96; *see also U.S. ex rel. Pasela v. Fenno*, 167 F.2d 593, 595 (2d Cir. 1948).

Petitioner has failed to point to any reason why this Court should decline to adopt the Report on this point. Instead, Petitioner simply urges this Court to consider unbinding and

17

unpersuasive precedent without any valid reason. Thus, this Court overrules Petitioner's objection on this basis.

## V.     CONCLUSION

For the foregoing reasons, this Court adopts the Report and Recommendation (ECF No. 15) in full, and grants Respondent's Motion to Dismiss, or in the alternative, for Summary Judgment (ECF No. 12). Thus, the Petition (ECF No. 1) is dismissed with prejudice.

IT IS SO ORDERED.

January 17, 2024                                          Joseph F. Anderson, Jr.
Columbia, South Carolina                                  United States District Judge